# EXHIBIT 1

**SHAHID KHAN**                          *          IN THE CIRCUIT COURT FOR
3150 North Ridge Road
Ellicott City, MD 21043,                 *          MONTGOMERY COUNTY
    *on his own behalf and on behalf of*
    *all others similarly situated,*         *

             Plaintiff,   *          Case No. V485220

        v.                     *

**CROWN ASSET MANAGEMENT, LLC**          *
3100 Breckinridge Blvd, Ste 725
Duluth, GA 30096                         *          **RECEIVED**
**Serve on:**
The Corporation Trust, Incorporated      *          MAR 2 4 2021
2405 York Road, Suite 201
Lutherville Timonium, MD 21093-2264      *          Clerk of the Circuit Court
                      Montgomery County, Md.

             Defendant.       *

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

## Class Action Complaint and Demand for Jury Trial

### Introduction

1.     Plaintiff Shahid Khan ("Mr. Khan") ("Plaintiff" or "Class Representative") on behalf of himself and all others similarly situated, sues Defendant Crown Asset Management, LLC ("Crown"). Crown is a debt-buyer, which claims to purchase debts originated through Prosper Funding, LLC ("PFL") and PFL's sole owner, Prosper Marketplace, Inc. ("PMI") (PFL and PMI are, collectively, "Prosper")[1], in transactions between Prosper and the members of the Class defined below ("Class Members"). However, no such debts exist.

2.     Prosper, Crown's assignor, is an unlicensed loan broker which has simply ignored Maryland credit and licensing laws, and engaged in an illegal predatory lending business in

---

[1]    The Prosper entities are not defendants in this lawsuit, but are defendants in a separate lawsuit raising claims directly against Prosper for its activities alleged in this lawsuit. *See Jones, et al. v. Prosper Marketplace, Inc., et al.*, Case No. 484731V (Cir. Ct. Mont. Co.). Mr. Khan is a member of the Class defined in the *Jones* Complaint.

transactions with Class Representative and Class Members. Prosper purported to sell the illegal and uncollectible loan accounts of Class Representative and Class Members to Crown – even though nothing was owed on those accounts from the beginning as a result of Prosper's blatant wrongdoing.

3. Maryland law strictly prohibits the very type of scheme that Prosper has employed. Prosper's transactions with Class Members have violated Maryland law in numerous respects.

4. For example, the Maryland Credit Services Businesses Act, Md. Code Ann., Com. Law § 14-1901 *et seq.* (the "MCSBA") requires loan brokers, like Prosper, to be licensed when arranging loans for Maryland consumer borrowers.

5. This is no secret. In *CashCall, Inc. v. Maryland Com'r of Fin. Regulation*, 448 Md. 412, 439 (2016) ("*CashCall*"), the Maryland Court of Appeals confirmed that the longstanding terms of the MCSBA apply to loan brokers like Prosper. *CashCall* addressed a lending set-up virtually identical to Prosper's and explained why Maryland law required a loan broker like Prosper to be licensed.

6. Indeed, Prosper's competitors – like LendingClub Corporation, Avant of Maryland, LLC, and Upstart Network, Inc. – are licensed by Maryland's Commissioner of Financial Regulation and have been for years. Prosper, however, is not, and has never been licensed.

7. Maryland's Legislature has imposed harsh consequences for conducting a brokering business like Prosper's in violation of the law. If a loan broker is not licensed, it may not collect or retain any money from its customers.

8. Yet Prosper repeatedly flouted and disregarded Maryland law, and arranged consumer loans for Class Representative and each Class Member in return for substantial compensation, frustrating the protections enacted by the General Assembly, evading regulatory oversight, damaging Class Representative and Class Members, and obtaining an unfair advantage over its licensed and regulated competitors in the process.

2

9.      In addition, Prosper routinely and uniformly violated the Maryland law which Prosper elected, in writing, to govern its transactions with Class Representative and Class Members – the Maryland Credit Grantor Closed End Credit Provisions, Md. Code Ann., Com. Law §§ 12-1001 *et seq.* ("CLEC").

10.     CLEC also requires a license to make a loan, which, once again, Prosper does not have.

11.     Moreover, CLEC §12-1023(b) explicitly prohibits Prosper from acting as a borrower's agent in forming or executing promissory notes. Yet in each and every transaction of Plaintiffs and the Class Members, Prosper ignored this prohibition, acted as an "attorney-in-fact" for the borrower, and illegally signed the promissory note with the borrower's name.

12.     Prosper's conduct, as more fully described below, violated not only the MCSBA, CLEC and Maryland licensing laws, but also the Maryland Consumer Protection Act, Md. Code Ann., Com. Law §13-101 *et seq.* (the "CPA"), the Maryland Consumer Debt Collection Act, Md. Code Ann., 14-201 *et seq.* ("MCDCA"), and the common law.

13.     Due to Prosper's numerous violations of the law, discussed in more detail below, Prosper was never entitled to collect any money from Class Representative or any Class Member.

14.     Although Prosper assigned the loan accounts of Class Representative and Class Members to Crown, Prosper could not assign any rights to Crown which it did not have. Prosper had no right to collect any money from Class Representative or any Class Member, and Crown, as Prosper's assignee, has no such right either.

15.     Nevertheless, Crown has sought to collect and collected sums from Class Representative and Class Members in violation of the law.

16.     As a result of the facts alleged in this Complaint, Class Representative and each Class Member are entitled to a declaration that Crown is not entitled to collect any amounts from Class

Representative and Class Members in connection with their transactions with Prosper, under Maryland's Declaratory Judgment Act, Md. Code Ann., Cts. & Jud. Pro. § 3-401 *et seq.*

17.     Class Representative and each Class member are also entitled to recover statutory damages under CLEC §12-1018(a)(2) and (b).

18.     In addition, Crown must return all payments made on the Prosper loans of Class Representative and Class Members within the applicable statute of limitations, under the CPA, and in *assumpsit* for money had and received. Crown must also disgorge all profits from its illegal scheme in restitution for unjust enrichment.

19.     Because Crown's dealings with Class Representative and Class Members arose from transactions which were form-driven, and because the transactions violate the law in materially uniform ways in the transactions of the Class Representative and Class Members, this lawsuit is well-suited for class action treatment.

## Parties

20.     Mr. Khan is a natural person who is a resident and citizen of the State of Maryland, and who was a resident of the State of Maryland at the time he registered in Maryland for a loan from Prosper.

21.     Crown is a Georgia limited liability company with its principal place of business in Georgia.

## Jurisdiction and Venue

22.     This Court has subject-matter jurisdiction over this case pursuant to Md. Cts. & Jud. Proc. Code Ann. §§ 1-501 and 4-402(e)(2).  This Court has personal jurisdiction pursuant to Md. Cts. & Jud. Proc. Code Ann. §§ 6-102 and 6-103(b), as Crown transacts business and performs work and service in the State of Maryland, contracts to supply services in the State of Maryland, and

4

regularly does and solicits business and engages in other persistent courses of conduct in the State of Maryland, including the business described in this Complaint.

23.     Venue is proper in this Court under Md. Cts. & Jud. Proc. Code Ann. §§ 4-402(e)(2) and 6-201, as the amount in controversy in this case exceeds $15,000.00 and because Crown carries on a regular business and habitually engages in vocation in Montgomery County, Maryland. Among other things, Crown directs its activity described in this Complaint to persons including residents of Montgomery County, Maryland.

### Factual Allegations for Individual and Class Relief

**Prosper's Business**

24.     Prosper brokered personal loans to Class Representative and each Class Member, in exchange for compensation, but Prosper has no license to do so under Maryland law.

25.     Prosper advertises that it offers access to personal consumer loans to Maryland consumers.

26.     Prosper's core business in Maryland in its transactions with Class Representative and Class Members was marketing and arranging loans through media outlets, including the internet.

27.     Prosper's advertisements directed Class Representative and Class Members to Prosper's website, where Class Representative and Class Members obtained loan application forms and instructions on how to complete those forms.

28.     Prosper provided a telephone number that Class Representative and Class Members could call to obtain assistance in filling out the website's loan application.

29.     Prosper's form adhesion loan "agreement" documents included language permitting Prosper to, within its sole discretion and for any reason or no reason, change any of the terms of any of its "agreements" with Class Representative and Class Members, at any time, without any

advance notice.

30.    Prosper's form adhesion loan documents included a written election of CLEC to govern its transactions with Class Representative and each Class Member.

31.    Prosper's form adhesion loan documents included provisions stating that Class Representative and each Class Member gave Prosper a power of attorney to sign a promissory note at some time in the future, for the Class Representative and each Class Member, only if Prosper deemed the loan worthy of originating and funding, in its sole discretion.

32.    In the transactions of Class Representative and each Class member, the power of attorney provisions were enforced, and PMI, acting on behalf of WebBank, signed a promissory note in the name of the borrower as the purported "attorney-in-fact" of the borrower, in connection with the formation and execution of the note.

33.    Neither Class Representative nor any Class Member personally signed any promissory note in connection with any Prosper loans.

34.    The loans to Class Representative and Class Members were branded as "Prosper" loans, and involved "Promissory Notes" which had a "Prosper" heading and bore a "Prosper Marketplace, Inc." copyright. However, the "Promissory Notes" in Class Representative's and Class Members' transactions were originated in the name of a state-chartered bank, WebBank. WebBank had agreed with Prosper, in advance of funding the "Prosper"-branded loans for Class Representative and Class Members, that Prosper would advertise and market for these loans, that Prosper would handle all of the work necessary to originate the loans, would service the loans after origination, and that each of these loans would be sold to Prosper promptly after origination.

35.    Each Class Member loan was sold to Prosper, under its pre-existing agreement with WebBank, shortly after origination, generally within days after the loans were funded by WebBank.

36.     Prosper managed all of the operations relating to the submission of loan applications by Class Representative and each Class Member and the making of those loans, in exchange for a fee.

37.     Prosper processed all loan applications from Class Representative and each Class Member to determine whether the Class Representative and each Class Member met eligibility criteria for the loan, responded to all inquiries regarding the loan origination and application process, delivered all documents to Class Representative and Class Members in the course of the loan origination and application process, and maintained all documents pertaining to the loans to Class Representative and Class Members.

38.     Prosper, in Class Representative and each Class Member's transaction, also conducted credit risk assessment and loan underwriting.

39.     Prosper determined that Class Representative and each Class Member satisfied the criteria required for a loan, and determined the amount of each loan.

40.     However, Prosper represented to Class Representative and each Class Member that the loan would be made by WebBank. Under Prosper's oversight and Prosper's contracts with WebBank, WebBank provided an extension of credit to each Class Member at Prosper's request, in the amount requested by Prosper.

41.     Prosper represented to Class Representative and Class Members that they would have to pay WebBank a non-refundable origination fee from the proceeds of their loan.

42.     But Prosper had agreed, in advance, to collect all payments, interest and fees due on the loans to Class Representative and each Class member.

43.     The purchase price Prosper paid for the purchase of Class Representative's and each Class Member's loan included the total amount of the loan actually received by the borrower, plus the origination fee paid by the borrower, plus accrued interest. Prosper purchased the loans from

WebBank before Class Representative or any Class Member had made any payments on the loans. Then Prosper, not WebBank, collected all sums — including the origination fee — from Class Representative and each Class Member. Prosper also collected interest from Class Representative and Class Members which was calculated based on including the "origination fee" as part of the principal amount of the loan. However, the origination fee was, in fact, interest. By collecting interest calculated on interest, Prosper compounded the interest on Class Representative's and each Class Member's loan, although Prosper represented to Class Representative and Class Members that it was collecting only simple interest. Prosper's representation that it was collecting "simple interest" from Class Representative and Class Members was false.

44.     In addition, in each Class Member's transaction, Prosper obtained a transaction fee from WebBank in return for facilitating the origination of the Class Member's loan. Prosper determined the exact amount of these "transaction fees" that it would be paid. These "transaction fees" were then paid to Prosper based upon the amount of the loan originated. These transaction fees constituted between 1% and 5% of the original principal balance of each loan, and on average totaled between 4 and 4.53% of the amount of the loan originated. These "transaction fees" constituted a portion of the origination fees in Class Representative's and each Class Member's transaction, and were ultimately paid by Class Members, with interest, through each of their periodic payments on their loans.

45.     Prosper also serviced and administered each loan to each Class member. This servicing and administration included statementing, payment processing, collections customers service, refunds and adjustments, customer disputes, and other services ordinary and customary in the servicing of installment loans. In addition to the other amounts it received in connection with Class Members' loans, Prosper received servicing fees as compensation for servicing Class Members'

loans. These servicing fees were calculated as a portion of the interest charges for each Class Member's loan.

46.     Prosper undertook to recover and collect the maximum payment of interest and principal possible from Class Members.

47.     Class Members never paid any loan payments, fees, or payments of any nature to WebBank in connection with the loans arranged by Prosper, but, instead, made all payments to Prosper, unless and until their loans were "charged off" and sold at a discount to Crown or another debt collector, and Class Members thereafter made payments to Prosper's assignee debt collector.

48.     The only contact Class Members had with WebBank in connection with their loans through Prosper was WebBank's deposit of money into their bank account at the direction, and under the supervision, of Prosper.

49.     In exchange for Prosper's role in assisting Class Representative and Class Members to obtain the aforementioned loans, Prosper received, through contracts with WebBank, the exclusive right to collect all payments of principal, interest and fees, including the origination fee. This arrangement rendered Prosper the *de facto* lender; the true lender. WebBank never received payment of the origination fee from the Class Representative or Class Members, Prosper did. Prosper's reason for existence was to profit by purportedly providing advice and assistance to consumers, including Class Representative and Class Members, in obtaining loans nominally from WebBank so that Prosper would receive, in reciprocation, the legal right to receive payments from consumers.

50.     This arrangement has been a lucrative business for Prosper.

51.     Prosper provided Class Representative and each Class Member with advice or assistance in the obtention of an extension of credit by others, and was compensated for doing so.

52.     Not only did Prosper broker the Class Representative's and Class Members' loans

9

without a license, Prosper *de facto* brokered the loans to itself, deceptively disguising the loans as legitimate bank loans.

53.     Although the loan proceeds for the Class Member's loans were purportedly drawn from WebBank, Prosper exerted control and ownership over those loans. Prosper carried out all interactions with the Class Representative and Class Members, accepted the ultimate credit risk, collected and pocketed the finance charges and fees, and owned and controlled the branding of the loans, which were only available through its website. Prosper was in fact the primary lender, creditor and collector in the loans that it made to Class Representative and Class Members.

**Prosper Does Not Have Any License to Conduct Its Business In Maryland**

54.     Prosper does not have any license to conduct its credit services and lending business in Maryland, and has never had any license to conduct its credit services and lending business in Maryland.

55.     However, Maryland law requires Prosper to be licensed by the Commissioner of Financial Regulation to conduct its credit services and lending business in Maryland. For example, both the MCSBA and CLEC require Prosper to have licenses which it does not have and has never had.

**Prosper Violated the MCSBA in Class Member Transactions**

56.     Prosper, including both PFL and PMI, is a "credit services business" under the MCSBA §14-1901(e)(1)(ii).

57.     Prosper violated numerous mandates of the MCSBA in its dealings with Class members.

58.     Prosper received money or other valuable consideration from Class Members when it had not secured a license from the Maryland Commissioner of Financial Regulation under Title 11, Subtitle 3 of the Financial Institutions Article, in violation of the MCSBA § 14-1902(1).

59.     Prosper received money and valuable consideration solely for the referral of Class Members to a credit grantor when the credit extended to the Class members was substantially on the same terms as those available to the general public, in violation of MCSBA §14-1902(2).

60.     Prosper made and used false and misleading representations in the offer and sale of the services of Prosper, in violation of MCSBA §14-1902(4). Among other things, Prosper represented to each Class Member that Prosper could be appointed as the Class Member's attorney-in-fact to sign a promissory note for the Class Member, and enforced that representation, when the Maryland law Prosper elected to govern each Class Member's transaction forbids doing so. In addition, Prosper represented that Class Members would have no opportunity to rescind their loans after funding, even though Maryland law required Prosper to provide a notice of cancellation which Class Members could use to rescind their loans. In addition, Prosper represented that the origination fees in Class Representative's and Class Members' transactions were non-refundable when, in fact, they were refundable under Maryland law. In addition, Prosper represented that the loans to Class Representative and Class Members carried simple interest, when they each in fact included compound interest.

61.     Prosper engaged, directly or indirectly, in acts, practices, and courses of business which operated as a fraud or deception on Class Members in connection with the offer or sale of the services of a credit services business, in violation of the MCSBA § 14-1902(5). Among other things, Prosper represented to each Class Member that Prosper could be appointed as the Class Member's attorney-in-fact to sign a promissory note for the Class Member, and enforced that representation, when the Maryland law Prosper elected to govern each Class Member's transaction forbids doing so. In addition, Prosper represented that Class Members would have no opportunity to rescind their loans after funding, even though Maryland law required Prosper to provide a notice of cancellation

11

which Class Members could use to rescind their loans. In addition, Prosper represented that the origination fees in Class Representative's and Class Members' transactions were non-refundable when, in fact, they were refundable under Maryland law. In addition, Prosper represented that the loans to Class Representative and Class Members carried simple interest, when they each in fact included compound interest.

62.     Prosper never provided to Class Representative or any Class Member any of the disclosures required by the MCSBA §14-1906, and never provided Class Representative or any Class Member the "NOTICE OF CANCELLATION" required under that section.

63.     Prosper materially and willfully misrepresented to Class Representative and each Class Member that they had no right to rescind any loans after the loans were made, when the MCSBA affirmatively required Prosper to disclose to Class Representative and each Class member that they could, in fact, rescind. That misrepresented information is required to be disclosed by the MCSBA. That information is also material to establishing Prosper's liability under the MCSBA. Prosper's false statement that the Class Members' loans could not be rescinded was a trick and contrivance intended to prevent Class Members from knowing or exercising their rights. By representing that loans could not be rescinded, and by failing to disclose the notice of cancellation which the MCSBA required Propser to disclose to Class Representative and each Class Member, Prosper concealed Class Members' rights to rescind their loans and concealed Prosper's violations of the MCSBA. Prosper's misrepresentation of Class Members' rights and concealment of its violations of the MCSBA was, at least, in reckless disregard of its obligations under the law. Prosper intentionally represented that Class Members' loans could not be rescinded, when they could; it intentionally did not provide legally required cancellation notices, and it concealed its wrongdoing and Class Representative and Class Members' rights. Class Representative and Class Members did not

12

discover these misrepresentations and concealments until, at least, early 2021.

**Prosper Violated CLEC in Each Class Member Transaction**

64.     In each Class Member Transaction, Prosper made a written election of CLEC in the agreement, note, or other evidence of the loan.

65.     Although CLEC § 12-1023 flatly forbids any provision by which a person acting on behalf of a holder of the agreement, note, or other evidence of the loan in a consumer transaction is treated as an agent of the borrower in connection with its formation or execution, Prosper included, in each Class Member's transaction, just such a provision.

66.     In particular, in Prosper's documents for Class Representative's and each Class Member's transaction, Prosper included provisions stating that PMI, acting on behalf of WebBank and PFL, was treated as the Class Representative's and each Class Member's agent in connection with signing the promissory note in the transaction.

67.     Prosper enforced, in Class Representative's and each Class Member's transaction, this prohibited provision. In particular, PMI acted as each Class Member's purported "attorney-in-fact" agent in signing the promissory note in the transaction, and proceeded to use the promissory note that Prosper signed to collect payments on its own behalf from Class Representative and each Class Member.

68.     At the same time, and in the same documents, Prosper referred to PFL, PMI and WebBank, collectively, as "we," and repeatedly stated that PMI was acting as an agent of both WebBank and PFL in connection with the Class Representative's and Class Members' transactions.

**Prosper Was Never Entitled to Collect Any Money from Class Members Due to Its Illegal Activity**

69.     In Class Representative's and each Class Member's transaction, Prosper elected CLEC

to govern the transaction, and yet Prosper then immediately violated CLEC by acting as agent for the Class member in connection with the formation and execution of the promissory note. As a result, no promissory note was formed, and Prosper was never entitled to collect any money from any Class Member in connection with the legally non-existent note.

70.     Moreover, Prosper was not licensed as required by the MCSBA. Accordingly, it was prohibited from receiving any money or valuable consideration from Class Representative or any Class Member under the MCSBA §14-1902(1).

71.     Furthermore, Prosper's purported contracts for services with Class Representative and each Class Member did not comply with the MCSBA. Accordingly, the purported contracts were void and unenforceable under the MCSBA § 14-1907(b), and Prosper was never entitled to enforce any terms of any of those purported contracts or collect any money from Class Representative or any Class Member in connection with those purported contracts.

72.     A credit services business license is subject to the licensing and investigatory provisions of the Maryland Installment Loans – Licensing Provisions, Md. Code Ann., Fin. Inst. §§11-301 *et seq.*, which require a license before Prosper could make any loans to Class Representative or Class Members. Prosper's lack of the required license means it never had the right to collect any money from Class Members.

73.     In addition, a credit services business license is subject to the provisions of the Maryland Consumer Loans – Licensing Provisions, Md. Code Ann., Fin. Inst. §§ 11-201 *et seq.* For that reason, as well, Prosper was never entitled to collect any money from Class Representative or Class Members.

74.     In addition, CLEC governed each Class Member transaction, but CLEC §12-1015 required Prosper to be licensed by the Commissioner in order to make a loan under CLEC.

Prosper's failure to obtain the required license means it was never entitled to collect any money from Class Representative or Class Members.

75.    Prosper was not licensed as required by Maryland law, the statutes requiring Prosper to be licensed are regulatory in nature for the protection of the public, rather than merely to raise revenue, and permitting Prosper to collect money from Class Members is against public policy.

76.    Prosper never had any right to collect money from Class Representative or Class Members, as a result of Prosper's illegal, unlicensed activity.

**Prosper Assigned Class Members' Loan Accounts to Crown**

77.    Prosper's debt-collector assignee Crown is not, and was never, entitled to collect money from Class Representative or any Class Members based on loan accounts, as a result of Prosper's illegal, unlicensed activity.

78.    Crown is a debt buyer company, which purchases debt charged off as uncollectible, at a pennies-on-the-dollar discount, and then attempts to collect the full "face value" of that debt.

79.    Prosper claimed to sell to Crown the right to collect money from Class Representative and Class Members whose accounts Prosper had "charged-off" as uncollectible.

80.    However, Prosper never had any right to collect any amounts from Class Representative or any Class Members.

81.    The rights Prosper claimed to be selling to Crown to collect amounts from Class Representative and Class Members were nonexistent.

82.    Crown has no right to collect any amounts from Plaintiff or any Class Member in connection with their Prosper transactions.

<u>**Class Representative's Experience**</u>

**Mr. Khan**

15

83.     On September 24, 2015, Mr. Khan received a loan with a face value of $10,000.00 through Prosper.

84.     $500 was deducted from Mr. Khan's loan proceeds as an "origination fee" before Mr. Khan received any money from the loan.

85.     Prosper's form adhesion documents for Mr. Khan's loan included a written election for CLEC to govern the loan.

86.     Prosper's form adhesion documents for Mr. Khan's loan also included multiple provisions giving Prosper the right to unilaterally change any of its agreements with Mr. Khan, at any time, without advance notice or an opportunity for Mr. Khan to reject any changes.

87.     Prosper's form adhesion documents for Mr. Khan's loan included provisions stating that PMI was acting on behalf of PFL and WebBank, and that Mr. Khan was required to authorize both PFL and PMI to act as Mr. Khan's attorney-in-fact to sign a promissory note for the loan.

88.     PMI acted on behalf of WebBank and PFL in Mr. Khan's transaction, and signed the promissory note for Mr. Khan as Mr. Khan's purported agent.

89.     Mr. Khan never signed a promissory note in his Prosper transaction.

90.     Mr. Khan paid back more than the principal amount of the loan he received from Prosper, and made payments of interest, costs, fees and other charges in addition to principal.

91.     Yet Prosper claims that Mr. Khan owes even more. It claims that it sold Crown the right to collect more than $5,194.02 from him in addition to what he paid Prosper.

92.     Crown has collected hundreds of dollars from Mr. Khan in connection with the account Prosper sold to Crown, and Crown has filed a lawsuit against Mr. Khan demanding that the Court force Mr. Khan to pay more than $4,248.00 to Crown on account of Prosper's illegal activity.

**Class Action Allegations**

16

93.     Class Representative sues on behalf of himself and the Class of similarly situated persons defined below:

All borrowers who obtained a consumer loan through Prosper where each and every one of the following requirements are met:

a)   The borrower registered with Prosper in Maryland and was a Maryland resident at the time of registration;

b)   The agreement, note, or other evidence of the loan included a written election of the Maryland Credit Grantor Closed End Credit Provisions, Md. Code Ann., Com. Law §§12-1001 et seq. ("CLEC");

c)   The loan was originated in the name of WebBank under an advance agreement that the loan would be sold to Prosper after origination;

d)   PMI signed the promissory note in the transaction on WebBank's behalf with the representation that it was the "attorney-in-fact" of the borrower;

e)   The borrower made one or more payments to Prosper on the loan; and,

f)   The Prosper loan account was assigned to Crown.

94.     Excluded from the Class are all employees, officers and directors of Defendant and its parent or subsidiary companies and predecessors and successors, and assigns, and all employees of the Court, and all persons in transactions where 1) the subject account was originated more than three years prior to the filing of this Complaint; and, 2) the subject account was satisfied more than

17

six months prior to the filing of this Complaint; and, 3) no payments have been made on the subject account within the past three years.

95.    The Class, as defined above, is identifiable.  The Class Representative is a member of the Class. The Class is so numerous that joinder of all members is impracticable.

96.    There are questions of law and fact which are not only common to the members of the Class but which predominate over any questions affecting only individual Class members.  The common and predominating questions include, but are not limited to:

      a.   Whether Prosper acted as a credit services business under the MCSBA in Class Members' transactions;

      b.   Whether Prosper failed to make any of the disclosures required by the MCSBA §14-1906;

      c.   Whether Prosper was required to be licensed with the Maryland Commissioner of Financial Regulation before engaging in transactions with Class Representative and Class Members;

      d.   Whether Prosper's acts in demanding appointment as an agent, and signing promissory notes, for Class Representative and Class Members violated CLEC;

      e.   Whether Prosper's transactions with each Class Member are contrary to the public policy of Maryland;

      f.   Whether the statutes requiring Prosper to be licensed are regulatory in nature for the protection of the public, rather than merely to raise revenue, and enforcing Class Members' Prosper loan accounts is against public policy;

g.  Whether Prosper or Crown ever had any right to enforce Class Members' loans;

h.  Whether each Class Member is entitled to a declaration under the Maryland Declaratory Judgment Act, Md. Code Ann., Cts. & Jud. Pro. §§3-401 et seq. that their loan account is uncollectible;

i.  Whether each Class Member is entitled to recover damages under the CLEC § 12-1018(a)(2) & (b);

j.  Whether each Class Member is entitled to recover amounts paid on their loan accounts within the applicable statute of limitations under the CPA, the MCDCA, and in money had and received;

k.  Whether the Class is entitled to disgorgement of Defendants' profits in restitution for unjust enrichment; and,

l.  Whether declaratory relief is proper to prevent Defendant from continuing to seek amounts from Class Members in violation of Maryland law and to compel Defendant's compliance with Maryland law in the future, as to Class Member accounts.

97.     Class Representative's claims are typical of the claims of the respective members of the Class within the meaning of Md. Rule 2-231(b)(3), and are based on and arise out of similar facts constituting the wrongful conduct of Defendant.

98.     Class Representative will fairly and adequately protect the interests of the Class within the meaning of Md. Rule 2-231(b)(4). Class Representative is committed to vigorously litigating this matter. Further, Class Representative has secured counsel experienced in handling consumer class actions and complex consumer litigation.

99.     Neither Class Representative nor Class Representative's counsel has any interests which might cause them not to vigorously pursue this claim.

100.    The prosecution of separate actions by individual members of the Class would create a risk of establishing incompatible standards of conduct for Defendant within the meaning of Md. Rule 2-231(c)(1)(A).

101.    Defendant's actions are generally applicable to the respective Class as a whole, and Class Representative seeks equitable remedies with respect to the Class within the meaning of Md. Rule 2-231(c)(2).

102.    Common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class and a class action is the superior method for fair and efficient adjudication of the controversy within the meaning of Md. Rule 2-231(c)(3).

103.    The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

104.    Class Representative's counsel are experienced in class actions, and foresee little difficulty in the management of this case as a class action.

<u>**Causes of Action**</u>

**Count One**

**Declaratory Relief under Md. Cts. & Jud. Pro. § 3-406**

105.    Class Representative re-alleges and incorporates by reference the allegations set forth above as if fully set forth herein.

106.    This claim for declaratory relief is brought under the Maryland Declaratory Judgment Act, Md. Code Ann., Cts. & Jud. Pro. § 3-406, to settle and obtain relief from uncertainty and insecurity with respect to the rights, status and legal relations of the Class Representative and Class

Members with Crown, under the consumer protections embodied in Maryland law.

107.    Crown maintains that PFL and PMI were not required to have a license from the Maryland Commissioner of Financial Regulation to engage in transactions with Class Members.

108.    Class Representative maintains that PFL and PMI were required to have a license from the Maryland Commissioner of Financial Regulation to engage in transactions with Class Representative and Class Members.

109.    Crown maintains that it and PFL and PMI did not violate CLEC in the transactions of Class Members.

110.    Class Representative maintains that PFL and PMI violated CLEC in their transactions and the transactions of Class Members, and that Crown violated CLEC in the transactions of Class Representative and Class Members.

111.    Crown maintains that it may assess and collect charges from Class Representative and Class Members.

112.    Class Representative asserts that Crown does not have, and never had, the right to assess or collect charges from him, or from Class Members, based on accounts assigned to Crown by Prosper, due to the facts alleged in this Complaint.

113.    Class Representative and Class Members have received or will receive collection notices from Crown demanding payment of the alleged amounts due, and have been sued or will be sued for collection of the sums which Crown claims are due.  Moreover, Crown also notifies credit reporting agencies (including Equifax, TransUnion and Experian) of the alleged balances due, thereby damaging the credit scores and history of Class Representative and the Class.

114.    These practices continue and will continue unless and until this Court declares and affirms that Defendant does not have a right to collect money from Class Members on their Prosper

21

loan accounts.

115.    This presents an actual, justiciable controversy between the parties relating to the construction of the purported contracts of Class Representative and members of the Class and the application of the law to those purported contracts. Defendant has sought and will continue to seek to collect amounts from Class Members when it is not legally entitled to do so. Defendant continues to harm Class Representative and members of the Class by doing so.

116.    Class Representative and members of the Class have a right to be free from the attempts of Defendant to collect amounts from them to which Defendant has no right.

### Count Two

### Violation of the Maryland Credit Grantor Closed End Credit Provisions

117.    Plaintiff re-alleges and incorporates by reference the allegations set forth above.

118.    PFL and PMI are credit grantors under CLEC in the transactions of Class Representative and Class Members.

119.    Crown is a credit grantor under CLEC in the transactions of Class Representative and Class Members.

120.    CLEC permits credit grantors to provide closed end credit under certain circumstances and subject to certain limitations, including compliance with provisions relating to interest charges. If a credit grantor complies with CLEC, the credit grantor may collect certain amounts in addition to the principal amount of the loan.

121.    In the event, however, that the credit grantor fails to comply with CLEC, the credit grantor "may collect only the principal amount of the loan and may not collect any interest, costs, fees, or other charges with respect to the loan." CLEC §12-1018(a)(2). In addition, for a knowing violation, the credit grantor "shall forfeit to the borrower 3 times the amount of interest, fees, and

22

charges collected in excess of that authorized by this subtitle." CLEC § 12-1018(b).

122.    In violation of CLEC, in Class Representative's and each Class Member's transaction, PFL and PMI enforced a provision by which a person acting on behalf of a holder of the agreement, note, or other evidence of the loan is treated as an agent of the borrower in connection with its formation or execution. *See* CLEC § 12-1023(b)(2)(iv).

123.    In violation of CLEC, in Class Representative's and each Class Member's transaction, Crown enforced a provision by which a person acting on behalf of a holder of the agreement, note, or other evidence of the loan is treated as an agent of the borrower in connection with its formation or execution. *See* CLEC § 12-1023(b)(2)(iv).

124.    PFL, PMI and Crown knowingly engaged in these violations of CLEC.

## Count Three

### Violation of the Maryland Consumer Debt Collection Act

125.    Class Representative re-alleges and incorporates by reference the allegations set forth above as if fully set forth herein.

126.    Crown, at all times relevant to the actions alleged herein, was a "collector" within the meaning of section 14-201(b) of the MCDCA, because the alleged debts of Class Representative and Class Members which Defendant sought to collect from Class Members through the actions described herein arose from consumer transactions – i.e. consumer loans.

127.    In collecting and attempting to collect on the alleged debts of Class Representative and Class Members, Crown violated section 14-202 of the MCDCA by undertaking the actions described in this Complaint.

128.    Among other things, without limitation, Crown violated section 14-202(8) of the MCDCA when it claimed, attempted, or threatened to enforce rights with knowledge that the rights

did not exist. Crown undertook a collection method of claiming, attempting and threatening to enforce a right to collect money from Class Representative and members of the Class, when it had no such right because its assignor Prosper, was not licensed to make, collect, or assign those loans, and Crown knew it.

129.    Nevertheless, Crown persisted in its method of collecting loans brokered and originated by Prosper without a license.

130.    Crown further knew that Prosper elected Maryland's CLEC as governing law in each transaction, which prohibited Prosper or Crown from enforcing a power of attorney in connection with the formation or execution of a promissory note for Class Representative and Class Members – yet Crown proceeded to affirmatively and intentionally collect amounts from Class Members based upon promissory notes signed by Prosper as Class Representative's and Class Members' "attorney-in-fact," thus enforcing Prosper's illegal requirement that it be permitted to act as Class Representative's and Class Members' agent for the purposes of forming and executing that promissory note. This method of collecting loans, by enforcing a provision prohibited by law, was illegal.

131.    Crown's actions in violation of the MCDCA proximately caused damages to Class Representative and Class Members. As a direct and proximate result of Crown's claims, attempts and threats to enforce rights which did not exist, Class Representative and Class Members were assessed and paid charges which should not have been collected through Defendants' unlawful collection methods, thereby causing them damages.

## Count Four

## Violation of the Maryland Consumer Protection Act

132.    Class Representative re-alleges and incorporates by reference the allegations set forth

24

above as if fully set forth herein.

133.    Maryland's Consumer Protection Act ("CPA"), Md. Code Ann., Comm. Law § 13-101 *et seq.*, prohibits any "person" from engaging in any unfair or deceptive trade practices, *inter alia,* in the extension of consumer credit and in the collection of consumer debts.  CPA, § 13-303(3) and (4).

134.    As a "person" under the CPA, § 13-101(h), Crown is prohibited from engaging in unfair, abusive or deceptive trade practices.

135.    Crown's systematic behavior described in this Complaint violated the CPA.

136.    Among other things, without limitation, Crown's violations of CLEC in its transactions with Class Representative and Class Members, and Crown's demand that Class Representative pay amounts which were not due to Crown, are unfair and deceptive practices in violation of the CPA.

137.    In addition, the CPA specifically prohibits Crown from making any false or misleading oral or written statement or other representation of any kind which has the capacity, tendency or effect of deceiving or misleading consumers.  CPA, § 13-301(1).

138.    The CPA further prohibits Crown from failing to state a material fact if the failure deceives or tends to deceive.  CPA § 13-301(3).

139.    In violation of the CPA, § 13-303(3) - (4) and § 13-301(1), Crown represented to Class Representative and Class Members that the amounts it was charging were permitted by law, and that Class Representative and Class Members owed it money, which, in fact, Class Representative and Class Members did not owe and which Crown could not lawfully collect. In these communications with Class Representative and Class Members, Crown engaged in misrepresentations and failures to state material facts which deceived and tended to deceive, and, again, violated the CPA. These written statements were false and misleading and tended to deceive Class Representative and Class Members.  Class Representative and Class Members were damaged

when Crown assessed and collected charges which were not owed.

140.    In violation of the CPA, § 13-303(3) - (4) and §13-301(3), Crown failed to disclose material facts to Class Representative and Class Members. Specifically, Crown failed to disclose that it was enforcing an illegal power of attorney provision in violation of CLEC, and failed to disclose that Crown was not entitled to collect the amounts it was collecting from Class Representative and Class Members.

141.    Crown failed to disclose to Class Representative and Class Members its violations of the law.

142.    These failures to disclose material facts led Class Representative and Class Members to make payments which were not due and which they would not have made had they been informed them of the material facts. Crown committed unfair and deceptive practices by collecting and attempting to collect on alleged debts which, in fact, were not due and this conduct constitutes unfair and deceptive trade practices in violation of the CPA, § 13-101 *et seq.*, including §§ 13-303(3) and (4), and §§ 13-301(1) and (3).

143.    As a result of Crown's unfair and deceptive trade practices in violation of the CPA, Class Representative and Class Members were caused injury and loss in the amount of the charges assessed to them by Crown.

### Count Five

### Restitution and Unjust Enrichment

144.    Class Representative re-alleges and incorporates by reference the allegations set forth above as if fully set forth herein.

145.    By paying money to Crown which was not owed or legally collectible, Class Representative and the Class Members conferred a benefit of these illegally collected amounts upon

Crown.

146.    Crown accepted the benefits conferred upon it by Class Representative and the Class
Members when it accepted and retained the money paid on their accounts. Crown was aware of
the benefits conferred on it, as it affirmatively demanded those benefits.

147.    Crown's collection, acceptance and retention of these amounts, when Crown was not
entitled to the charges as a matter of law, was and continues to be unjust and inequitable. Crown
has not refunded the unlawfully collected amounts to Class Representative and Class Members.
Crown should not be permitted to retain the benefits of those unlawful collections.   Crown's
continued withholding of the unlawfully collected amounts is improper.

148.    Class Representative and Class Members conferred these unjust benefits upon Crown
after and as a result of Crown's misconduct as set forth herein.

## Count Six

## Money Had and Received

149.    Class Representative re-alleges and incorporates by reference the allegations set forth
above as if fully set forth herein.

150.    Crown collected money from Class Representative and Class Members to which it had
no legal or equitable right.

151.    Crown had no legal or contractual right to collect any money from Class Representative
or Class Members, as PFL and PMI had no right to collect any money from Class Members when
it assigned their loan accounts to Crown.

152.    These actions of Crown were and are illegal.

153.    As a result of the actions alleged above, Crown obtained possession of money which, in
equity and good conscience, it ought not to be allowed to retain and should return to Class

Representative and other Class members.

WHEREFORE, Class Representative demands declaratory judgment and judgment in an aggregated amount for the Class as a whole in excess of $75,000.00, as follows:

A.  A declaratory judgment establishing that Crown never had any right to collect any money from Class Representative or Class Members based on an assignment of a loan account from Prosper;

B.  Payment to Class Representative and Class Members of the statutory damages imposed under CLEC, §12-1018(a)(2), including a return to Class Representative and Class Members of all sums paid to Crown as interest, costs, fees or other charges;

C.  Payment to Class Representative and Class Members of the statutory damages imposed under CLEC § 12-1018(b), of three times the interest, costs, fees, and other charges which Crown collected in excess of that allowed by CLEC;

D.  Payment to Class Representative and Class Members of actual damages for Crown's violations of the MCDCA and the MCPA;

E.  Payment to Class Representative and Class Members of all amounts collected from them by Crown in connection with a Prosper loan account;

F.  Disgorgement in restitution of all profits and benefits realized

28

by Crown as a result of its transactions involving Class Representative and Class Members;

G.   Judgment in favor of Class Representative and the Class against Crown for such compensatory damages as the evidence shall warrant;

H.   Pre-judgment and post-judgment interest at the legal rate on all sums awarded to Class Representative and Class Members;

I.   Reasonable counsel fees and the costs of these proceedings; and,

J.   Such other and further relief as the nature of this case may require.

Respectfully submitted,

Benjamin H. Carney
bcarney@GWCfirm.com
Richard S. Gordon
rgordon@GWCfirm.com
GORDON, WOLF & CARNEY, CHTD.
100 West Pennsylvania Ave., Suite 100
Towson, Maryland 21204
Telephone: (410) 825-2300
Facsimile: (410) 825-0066

**Attorneys for Class Representative and the Class**

## JURY TRIAL

Plaintiffs demand a trial by jury on all issues triable of right by a jury.

Benjamin H. Carney

**RECEIVED**

**MAR 24 2021**

Clerk of the Circuit Court
Montgomery County, Md.

IN THE CIRCUIT COURT FOR <u>Montgomery County</u>
_____
(City or County)

## CIVIL - NON-DOMESTIC CASE INFORMATION REPORT

### DIRECTIONS

*Plaintiff:* This Information Report must be completed and attached to the complaint filed with the Clerk of Court unless your case is exempted from the requirement by the Chief Judge of the Court of Appeals pursuant to Rule 2-111(a).

*Defendant:* You must file an Information Report as required by Rule 2-323(h).

***THIS INFORMATION REPORT CANNOT BE ACCEPTED AS A PLEADING***

FORM FILED BY: ☒PLAINTIFF  ☐DEFENDANT    CASE NUMBER <u>Vh85220</u>
(Clerk to insert)

CASE NAME: <u>Shahid Khan</u> _____ vs. <u>Crown Asset Management, LLC</u>
    Plaintiff                                      Defendant

PARTY'S NAME: _____  PHONE: _____

PARTY'S ADDRESS: _____

PARTY'S E-MAIL: _____

**If represented by an attorney:**

PARTY'S ATTORNEY'S NAME: <u>Benjamin H. Carney</u> _____ PHONE: <u>410-825-2300</u>

PARTY'S ATTORNEY'S ADDRESS: <u>100 W. Pennsylvania Ave., Ste. 100, Towson, MD 21204</u>

PARTY'S ATTORNEY'S E-MAIL: <u>bcarney@GWCfirm.com</u>

JURY DEMAND? ☒Yes ☐No

RELATED CASE PENDING? ☒Yes ☐No  If yes, Case #(s), if known: <u>484731V</u>

ANTICIPATED LENGTH OF TRIAL?: ____hours  <u>5</u> days

### PLEADING TYPE

New Case: ☒Original  ☐ Administrative Appeal  ☐ Appeal
Existing Case: ☐Post-Judgment  ☐ Amendment
*If filing in an existing case*, skip Case Category/ Subcategory section - go to Relief section.

### IF NEW CASE: CASE CATEGORY/SUBCATEGORY (*Check one box.*)

**TORTS**
- ☐ Asbestos
- ☐ Assault and Battery
- ☐ Business and Commercial
- ☐ Conspiracy
- ☐ Conversion
- ☐ Defamation
- ☐ False Arrest/Imprisonment
- ☐ Fraud
- ☐ Lead Paint - DOB of Youngest Plt: ____
- ☐ Loss of Consortium
- ☐ Malicious Prosecution
- ☐ Malpractice-Medical
- ☐ Malpractice-Professional
- ☐ Misrepresentation
- ☐ Motor Tort
- ☐ Negligence
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability
- ☐ Specific Performance
- ☐ Toxic Tort
- ☐ Trespass
- ☐ Wrongful Death

**CONTRACT**
- ☐ Asbestos
- ☐ Breach
- ☐ Business and Commercial
- ☐ Confessed Judgment (Cont'd)
- ☐ Construction
- ☐ Debt
- ☐ Fraud

- ☐ Government
- ☐ Insurance
- ☐ Product Liability

**PROPERTY**
- ☐ Adverse Possession
- ☐ Breach of Lease
- ☐ Detinue
- ☐ Distress/Distrain
- ☐ Ejectment
- ☐ Forcible Entry/Detainer
- ☐ Foreclosure
  - ☐ Commercial
  - ☐ Residential
  - ☐ Currency or Vehicle
  - ☐ Deed of Trust
  - ☐ Land Installments
  - ☐ Lien
  - ☐ Mortgage
  - ☐ Right of Redemption
  - ☐ Statement Condo
- ☐ Forfeiture of Property / Personal Item
- ☐ Fraudulent Conveyance
- ☐ Landlord-Tenant
- ☐ Lis Pendens
- ☐ Mechanic's Lien
- ☐ Ownership
- ☐ Partition/Sale in Lieu
- ☐ Quiet Title
- ☐ Rent Escrow
- ☐ Return of Seized Property
- ☐ Right of Redemption
- ☐ Tenant Holding Over

**PUBLIC LAW**
- ☐ Attorney Grievance
- ☐ Bond Forfeiture Remission
- ☐ Civil Rights
- ☐ County/Mncpl Code/Ord
- ☐ Election Law
- ☐ Eminent Domain/Condemn.
- ☐ Environment
- ☐ Error Coram Nobis
- ☐ Habeas Corpus
- ☐ Mandamus
- ☐ Prisoner Rights
- ☐ Public Info. Act Records
- ☐ Quarantine/Isolation
- ☐ Writ of Certiorari

**EMPLOYMENT**
- ☐ ADA
- ☐ Conspiracy
- ☐ EEO/HR
- ☐ FLSA
- ☐ FMLA
- ☐ Workers' Compensation
- ☐ Wrongful Termination

**INDEPENDENT PROCEEDINGS**
- ☐ Assumption of Jurisdiction
- ☐ Authorized Sale
- ☐ Attorney Appointment
- ☐ Body Attachment Issuance
- ☐ Commission Issuance

- ☐ Constructive Trust
- ☐ Contempt
- ☐ Deposition Notice
- ☐ Dist Ct Mtn Appeal
- ☐ Financial
- ☐ Grand Jury/Pctit Jury
- ☐ Miscellaneous
- ☐ Perpetuate Testimony/Evidence
- ☐ Prod. of Documents Req.
- ☐ Receivership
- ☐ Sentence Transfer
- ☐ Set Aside Deed
- ☐ Special Adm. - Atty
- ☐ Subpoena Issue/Quash
- ☐ Trust Established
- ☐ Trustee Substitution/Removal
- ☐ Witness Appearance-Compel

**PEACE ORDER**
- ☐ Peace Order

**EQUITY**
- ☒ Declaratory Judgment
- ☐ Equitable Relief
- ☐ Injunctive Relief
- ☐ Mandamus

**OTHER**
- ☐ Accounting
- ☐ Friendly Suit
- ☐ Grantor in Possession
- ☐ Maryland Insurance Administration
- ☐ Miscellaneous
- ☐ Specific Transaction
- ☐ Structured Settlements

CC-DCM-002 (Rev. 04/2017)         Page 1 of 3

| IF NEW OR EXISTING CASE: RELIEF (Check All that Apply) | | | |
|---|---|---|---|
| ☐ Abatement | ☐ Earnings Withholding | ☒ Judgment-Interest | ☐ Return of Property |
| ☐ Administrative Action | ☐ Enrollment | ☒ Judgment-Summary | ☐ Sale of Property |
| ☐ Appointment of Receiver | ☐ Expungement | ☒ Liability | ☐ Specific Performance |
| ☐ Arbitration | ☒ Findings of Fact | ☐ Oral Examination | ☐ Writ-Error Coram Nobis |
| ☐ Asset Determination | ☐ Foreclosure | ☐ Order | ☐ Writ-Execution |
| ☐ Attachment b/f Judgment | ☐ Injunction | ☐ Ownership of Property | ☐ Writ-Garnish Property |
| ☐ Cease & Desist Order | ☐ Judgment-Affidavit | ☐ Partition of Property | ☐ Writ-Garnish Wages |
| ☐ Condemn Bldg | ☒ Judgment-Attorney Fees | ☐ Peace Order | ☐ Writ-Habeas Corpus |
| ☐ Contempt | ☐ Judgment-Confessed | ☐ Possession | ☐ Writ-Mandamus |
| ☒ Court Costs/Fees | ☐ Judgment-Consent | ☐ Production of Records | ☐ Writ-Possession |
| ☒ Damages-Compensatory | ☒ Judgment-Declaratory | ☐ Quarantine/Isolation Order | |
| ☐ Damages-Punitive | ☐ Judgment-Default | ☐ Reinstatement of Employment | |

*If you indicated Liability above*, mark one of the following.  This information is <u>not</u> an admission and may not be used for any purpose other than Track Assignment.

☐ Liability is conceded.  ☐ Liability is not conceded, but is not seriously in dispute. ☒ Liability is seriously in dispute.

| MONETARY DAMAGES (Do not include Attorney's Fees, Interest, or Court Costs) | | | |
|---|---|---|---|
| ☐ Under $10,000 | ☐ $10,000 - $30,000 | ☐ $30,000 - $100,000 | ☒ Over $100,000 |
| ☐ Medical Bills $_____ | ☐ Wage Loss $_____ | ☐ Property Damages $_____ | |

| ALTERNATIVE DISPUTE RESOLUTION INFORMATION | | | |
|---|---|---|---|
| Is this case appropriate for referral to an ADR process under Md. Rule 17-101? (Check all that apply) | | | |
| A. Mediation | ☐ Yes   ☒ No | C. Settlement Conference | ☐ Yes   ☒ No |
| B. Arbitration | ☐ Yes   ☒ No | D. Neutral Evaluation | ☐ Yes   ☒ No |

| SPECIAL REQUIREMENTS |
|---|
| ☐ If a Spoken Language Interpreter is needed, **check here and attach form CC-DC-041** |
| ☐ If you require an accommodation for a disability under the Americans with Disabilities Act, **check here and attach form CC-DC-049** |

| ESTIMATED LENGTH OF TRIAL |
|---|
| *With the exception of Baltimore County and Baltimore City, please fill in the estimated LENGTH OF TRIAL.*  **(Case will be tracked accordingly)** |

☐ 1/2 day of trial or less      ☐ 3 days of trial time

☐ 1 day of trial time      ☒ More than 3 days of trial time

☐ 2 days of trial time

| BUSINESS AND TECHNOLOGY CASE MANAGEMENT PROGRAM |
|---|
| *For all jurisdictions, if Business and Technology track designation under Md. Rule 16-308 is requested, attach a duplicate copy of complaint and check one of the tracks below.* |

☐ **Expedited**- Trial within 7 months of          ☒ **Standard** - Trial within 18 months of
Defendant's response                                    Defendant's response

EMERGENCY RELIEF REQUESTED

## COMPLEX SCIENCE AND/OR TECHNOLOGICAL CASE MANAGEMENT PROGRAM (ASTAR)

*FOR PURPOSES OF POSSIBLE SPECIAL ASSIGNMENT TO ASTAR RESOURCES JUDGES under Md. Rule 16-302, attach a duplicate copy of complaint and check whether assignment to an ASTAR is requested.*

☐ **Expedited** - Trial within 7 months of Defendant's response     ☐ **Standard** - Trial within 18 months of Defendant's response

*IF YOU ARE FILING YOUR COMPLAINT IN BALTIMORE CITY, OR BALTIMORE COUNTY, PLEASE FILL OUT THE APPROPRIATE BOX BELOW.*

### CIRCUIT COURT FOR BALTIMORE CITY (CHECK ONLY ONE)

| | | |
|---|---|---|
| ☐ | Expedited | Trial 60 to 120 days from notice. Non-jury matters. |
| ☐ | Civil-Short | Trial 210 days from first answer. |
| ☐ | Civil-Standard | Trial 360 days from first answer. |
| ☐ | Custom | Scheduling order entered by individual judge. |
| ☐ | Asbestos | Special scheduling order. |
| ☐ | Lead Paint | Fill in: Birth Date of youngest plaintiff_____ . |
| ☐ | Tax Sale Foreclosures | Special scheduling order. |
| ☐ | Mortgage Foreclosures | No scheduling order. |

### CIRCUIT COURT FOR BALTIMORE COUNTY

| | | |
|---|---|---|
| ☐ | Expedited (Trial Date-90 days) | Attachment Before Judgment, Declaratory Judgment (Simple), Administrative Appeals, District Court Appeals and Jury Trial Prayers, Guardianship, Injunction, Mandamus. |
| ☐ | Standard (Trial Date-240 days) | Condemnation, Confessed Judgments (Vacated), Contract, Employment Related Cases, Fraud and Misrepresentation, International Tort, Motor Tort, Other Personal Injury, Workers' Compensation Cases. |
| ☐ | Extended Standard (Trial Date-345 days) | Asbestos, Lender Liability, Professional Malpractice, Serious Motor Tort or Personal Injury Cases (medical expenses and wage loss of $100,000, expert and out-of-state witnesses (parties), and trial of five or more days), State Insolvency. |
| ☐ | Complex (Trial Date-450 days) | Class Actions, Designated Toxic Tort, Major Construction Contracts, Major Product Liabilities, Other Complex Cases. |

| | |
|---|---|
| 3/19/2021 | /s/ Benjamin H. Carney |
| Date | Signature of Counsel / Party |
| 100 W. Pennsylvania Ave., Ste. 100 | Benjamin H. Carney |
| Address | Printed Name |
| Towson | MD | 21204 |
| City | State | Zip Code |

## Rule 16-308(c) STATEMENT

This case is a consumer class action seeking relief from the debt-buyer of accounts from a large "Financial Technology" consumer loan brokering business operating in violation of Maryland statutes. As discussed below, it satisfies the Rule 16-308(c) factors for assignment to the Business and Technology Program (the "Program"):

**(1)      The nature of the relief sought**.

The Maryland Business and Technology Task Force Report (the "Report") recommended that eligibility for assignment to the Program be restricted to complaints "seeking compensatory damages totaling $50,000.00 or more, or . . . primarily injunctive or other equitable relief." Report, p.8 part VI.B.1.a.  The present case meets this requirement.  Although the exact size of the Class and exact amount of damages recoverable in this case are unknown, the Complaint seeks to recover damages on behalf of a Class of numerous Maryland consumers, where aggregated damages are expected to exceed $75,000. *See* Complaint *ad damnum* clause. In addition, the Complaint seeks equitable declaratory relief concerning the licensing obligations of the loan seller, the effects of those obligations on the Defendant debt-buyer, and its rights to collect amounts from Class members. Accordingly, the nature of the relief sought weighs in favor of B&T assignment.

**(2)      The number and diverse interests of the parties.**

With respect to this factor, the Report determined that the Program was appropriate for cases involving business entities, as well as individuals "if involved in a dispute appropriate for Program designation."  Report p. 8 part VI.B.1.  The Task Force Report further found that "commercial class actions" "should presumptively be assigned to the Program." *Id.* at pp. 8-9, part VI.B.1.b. (emphasis added).  The present case meets this requirement, as it involves a business entity, arises from the entity's commercial activity, including the purchase of purported financial accounts, and is a commercial class action. This factor weighs in favor of B&T assignment.

**(3)      The anticipated nature and extent of pretrial discovery and motions.**

This case will require complex discovery and motions practice, including discovery, briefing, and decision on a motion for class certification prior to resolution of complicated merits issues. The complex nature of the class-action proceedings weighs in favor of Program assignment.

**(4)      Whether the parties agree to waive venue for the hearing of motions and other pretrial matters.**

Plaintiffs do not anticipate that this will be an issue in this case.

**(5)      The degree of novelty and complexity of the factual and legal issues presented.**

This case presents complex legal issues.  Among other things, this case involves alleged violations of Maryland's Unfair and Deceptive Trade Practices Act ("UDAP") (i.e., the Maryland Consumer Protection Act and related statutes), rendering it a case which should be "presumptively assigned to the Program." Report pp. 9 part VI.B.1.b(x).  The complex nature of the case also supports Program assignment, as noted above.

**(6)      Whether business or technology issues predominate over other issues presented in the action.**

Business and technology issues predominate over other issues in this case.  As discussed above, the Program is designed to accommodate commercial class actions, as well as cases asserting claims under the UDAP.  As the issues in this case will focus on class certification issues as well as the UDAP, issues that the Program was designed to address are the focus of this case.

**(7)      The willingness of the parties to participate in ADR procedures.**

Plaintiffs are willing to explore participation in mediation.